## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION, YOUNGSTOWN

LAURA MANN
650 E. Martin St.
East Palestine, OH 44413

And

SHANNON MANN
650 E. Martin St.
East Palestine, OH 44413

      Plaintiffs,

v.

NORFOLK SOUTHERN CORP.
650 W. Peachtree Street NE
Atlanta, GA 30308

And

NORFOLK SOUTHERN RAILWAY CO.
c/o Statutory Agent
Corporation Service Company
3366 Riverside Drive, Suite 103
Upper Arlington, OH 43221

      Defendants.

**Civil Action No.:**
_____

**JURY DEMAND**

## COMPLAINT

Plaintiffs, Laura Mann and Shannon Mann, file this Complaint against

Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company,

(collectively "Norfolk Southern") and in support thereof, allege as follows:

## PARTIES

1.  Plaintiff, Laura Mann, is an Ohio citizen with her domicile at 650 E. Martin St., East Palestine, OH 44413. Her daughter, Plaintiff Shannon Mann, lived with her at the East Palestine home prior to and including February 3rd, 2023.

2.  Plaintiff, Shannon Mann, is an Ohio citizen with her domicile at 650 E. Martin St., East Palestine, OH 44413.

3.  Defendant, Norfolk Southern Corporation, is a Virginia corporation with its principal place of business located at 1200 Peachtree Street NE, Atlanta, Georgia.

4.  Defendant, Norfolk Southern Railway Company, is a wholly owned subsidiary of Norfolk Southern Corporation. Defendant, Norfolk Southern Railway Company, is a Virginia corporation with its principal place of business located at 1200 Peachtree Street NE, Atlanta, Georgia.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and because Plaintiffs allege an amount in controversy in excess of $75,000, exclusive of interest and costs.

6.  This Court has personal jurisdiction over Defendants because they regularly conduct business in this District and, in fact, operated a railway enterprise in this District.

7.    Defendants have operated a railway system in the State of Ohio for many years, including the transportation of industrial chemicals that have substantial toxicity to animals and human.

8.    Defendants profited from the operation of their railway company in the state of Ohio and derive substantial revenue from business operations in this State.

9.    It is alleged that Defendants committed various civil wrongs against the citizens of Ohio as more fully described in this Complaint.  The causes of action alleged in this pleading arise out of Defendants' business operations in this State.

10.   Defendants were aware that they may be called upon to answer for civil wrongs committed against the citizens of the State of Ohio in federal court sitting in this jurisdiction.

11.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, and Defendants' actions and business enterprise caused harm to Plaintiffs in this District.

## FACTUAL ALLEGATIONS

12.   This action arises out of the catastrophic derailment of a Norfolk Southern train in East Palestine, Ohio and Norfolk Southern's subsequent burning of toxic and carcinogenic materials, resulting in the release of these toxic and carcinogenic materials into the soil, water, and air of East Palestine and the surrounding area.

13.   On February 3, 2023, Train 32N, a 150-car Norfolk Southern freight train spanning over a mile and a half, was traveling through Ohio while making its journey

3

from Madison County, Illinois to Conway, Pennsylvania. At approximately 8:55 P.M., Train 32N derailed in East Palestine, Ohio, igniting an inferno and casting a toxic cloud of poisonous smoke throughout the surrounding area.

14.     Before the derailment, a mechanical defect alarm sounded on the eastbound train. An overheated wheel bearing was failing and about to lead to the catastrophic trainwreck. In total, thirty-eight railcars left the tracks, and an additional twenty railcars were damaged, several of which were carrying dangerous and hazardous industrial materials.

15.     At approximately 11:00 P.M., the area within a mile radius of the derailment was ordered to evacuate.

16.     Train 32N was transporting chemicals and combustible materials, including hundreds of thousands of pounds of polyvinyl, polyethylene, butyl acrylates, ethylhexyl acrylate, ethylene glycol monobutyl ether, and vinyl chloride.  The cargo also included residue from a prior delivery of a known carcinogen, benzene.

17.     Vinyl chloride is a carcinogen and is extremely toxic to humans.  Public health bodies such as the International Agency for Research on Cancer (IARC), U.S. Environmental Protection Agency (EPA), and National Toxicology Program (NTP) unanimously characterize vinyl chloride as a known human carcinogen. Vinyl chloride causes numerous forms of cancer, including rare forms of liver cancer. There is no safe level of vinyl chloride exposure for humans. Even minor exposures can cause DNA mutations that may later develop into cancer or other serious human diseases.

18.     In the derailment and fire, certain of these chemicals combusted and burned for several days. Thick, billowing smoke emanated from the fire and spread across the town of East Palestine and surrounding area.

19.     The vinyl chloride was being stored in DOT105 pressurized tanks, which is required for chemicals as dangerous as vinyl chloride. In the heat from the burning fire, safety valves on these pressurized tanks opened to relieve pressure and thereby vented vinyl chloride into the atmosphere and, ultimately, into the surrounding community.

20.     As the blaze continued unabated, officials feared that the DOT105 tanks may rupture, causing an uncontrolled explosion. Both Ohio and Pennsylvania government officials ordered an immediate evacuation of the vicinity within a mile of the derailment.

21.     Defendants then punctured holes in the vinyl chloride containers, allowed the chemical to discharge into the environment, and set it on fire. This chemical fire burned, and its constituents traveled across the East Palestine community, impacting people and properties within the smoke and vapor plume.

22.     Approximately 1500 to 2000 East Palestine residents were told to evacuate following the derailment. Schools remained closed for at least a week afterward. On February 6, 2023, Ohio Governor Mike DeWine and Pennsylvania Governor Josh Shapiro expanded the evacuation area to include anyone in a one-by-two-mile area surrounding East Palestine. This included parts of western Pennsylvania.

23.    On February 10, 2023, the Environmental Protection Agency stated that Defendants' train derailment and subsequent fire released and continues to release vinyl chloride, butyl acrylate, ethylhexyl acrylate, and ethylene glycol monobutyl ethers into the air, surface soil, and surface waters.

24.    On social media and news reports, residents reported that fish and frogs were dying in local streams. Other residents shared images of dead animals or reported chemical smells continuing for days after the derailment and burning occurred.

25.    The estimated number of land and aquatic animals killed exceeds 40,000. Many of the aquatic animals were found in Sulphur Run, Leslie Run, Bull Creek, and a portion of the North Fork of Beaver Creek. Most of the fish appear to be small suckers, minnows, darters, and sculpin. Most of these deaths are believed to have been caused by the immediate release of contaminants into the water.

26.    Acrylate odors were noted by responders during indoor air monitoring.

27.    Acrylate odors along Sulphur Run, Leslie Run, Bull Creek, North Fork Little Beaver Creek, and Little Beaver Creek were noted by responders during sampling and containment activities.

28.    Residents have also complained of headaches or of experiencing a sick, nauseous feeling for days after the derailment.

29.    Norfolk Southern knew or should have known that initiating an enormous chemical burn of hundreds of thousands of pounds of volatile and toxic compounds would likely cause dangerous human exposures, contaminate properties,

kill or injure fish and wildlife, and result in the forced evacuation of homes and schools. Despite this understanding, Norfolk Southern set fire to their chemical cargo anyway.

30.     Draining the railcars of vinyl chloride exposed the soil to this dangerous chemical. Vinyl chloride is persistent in the environment and can therefore leach into groundwater.

31.     Releasing this amount of vinyl chloride into the environment was done in reckless disregard for the rights and welfare of others.

32.     The decision by Norfolk Southern to vent and burn the vinyl chloride resulted in a creation of vinyl chloride byproducts, including hydrogen chloride and phosgene.

33.     Both hydrogen chloride and phosgene are incredibly dangerous and toxic to human health. When hydrogen chloride combines with moisture it creates hydrochloric acid. The symptoms of hydrochloric acid exposure include eye, skin, and lung irritation. In extreme cases, exposure can be fatal. Norfolk Southern knew, or should have known, draining and burning vinyl chloride would expose the surrounding area to extremely toxic chemicals via the air, soil, and water.

34.     Based on a preliminary investigation, the National Transportation Safety Board concluded that the derailment was "100% preventable."  As such, the derailment and subsequent burning of toxic chemicals that took place in East Palestine, Ohio should not have happened and would not have happened but for the tortious conduct of Norfolk Southern.

35. Plaintiff Laura Mann owns property that was her primary domicile and residence within 2000 feet or 1/3 of a mile from the train derailment and burn site in East Palestine, Ohio. She has lived at her residence at 650 E Martin St. since 2008. Laura Mann is a single mom and was only able to purchase the property after her father's passing. She had her brother renovate the home to provide a safe place for her children and, eventually, grandchildren. Plaintiff Shannon Mann has moved back to the home and has resided in the separate apartment on the property since 2020. Plaintiffs evacuated on February 3, 2023, to stay at a local hotel and, to date, have not slept in their home since a police officer knocked on their door and told them to leave.

36. Therefore, Plaintiffs were in the zone of danger of harm resulting from the derailment, and it was foreseeable to Norfolk Southern that Plaintiffs would suffer damages and harm to their persons and property as a direct, proximate, and foreseeable result of Defendants' tortious conduct.

37. As a result of Norfolk Southern's negligent and reckless conduct, Plaintiffs' home and property were blanketed in noxious smoke and chemical vapors emanating from the train derailment and burn site. A chemical and/or burning smell remains present at the property, including within their home, even weeks after the train derailment.

38. As a direct result of the train derailment, burn, and related chemical releases, Plaintiffs were exposed to these noxious chemicals. Due to being exposed to the noxious chemicals, Plaintiffs have experienced certain acute symptoms, including, but not limited to, headaches, burning nose, runny nose, sore throat, persistent

coughing, itchy and irritated eyes, and itchy skin. Plaintiffs did not experience these symptoms before the train derailment. Plaintiffs are incurring expenses resulting from purchasing food and drinks and unable to cook for themselves while at their temporary accommodations as well as gas because both Plaintiffs commute to work have increased travel expenses as a result of being displaced from their residence.

39.     Plaintiffs are aware that the chemicals and toxins to which they were exposed include agents that are known to cause long-term health problems, including cancer, genetic abnormalities, and chronic diseases.   Plaintiffs' legitimate and reasonable concern about developing further health risks, including cancer, springs from a reasonable apprehension that manifests itself in mental distress.  Thus, as to all causes of action alleged, Plaintiff seeks all available compensation for mental anguish and emotional distress associated with their legitimate fear caused by the statistical increase they face of developing future disease.

40.     Plaintiffs also seeks recovery for the costs of cleaning up, remediating, and/or repairing her home and property as a result of the damage caused by Defendants.

## CLAIMS FOR RELIEF
## COUNT I: NEGLIGENCE

41.     Plaintiffs incorporates and re-alleges the allegations in paragraphs 11-38 above.

42.     Defendants owed Plaintiffs a duty to conduct their railway operations in a reasonable and prudent manner that would not cause injury or harm.

43.     Defendants also owed Plaintiffs a duty to transport hazardous and toxic chemicals using reasonable care and in a manner that minimized the possibility those chemicals would be released to the environment.

44.     Defendants breached their duty of care by operating Train 32N in a negligent manner, causing it to derail, and by releasing toxic chemicals, including vinyl chloride, to the environment and the community surrounding East Palestine, Ohio.

45.     Defendants further breached their duties by failing to contain and prevent chemicals released from Train 32N, including vinyl chloride, from spreading to and contaminating the surrounding environment and exposing nearby individuals.  Indeed, Defendants choose to burn the chemicals despite knowing the danger and harm it would cause to nearby residents.

46.     Defendants' conduct in operating Train 32N fell below the standards of care that apply to railroad companies in the same or similar circumstances.  Additional specific acts of negligence will be identified as discovery progresses.

47.     Plaintiffs were in the zone of danger for harm due to the train derailment. As a direct and proximate result of Defendants' tortious conduct, Plaintiffs were exposed to toxic chemicals at significant levels. These exposures have created a significantly increased risk of disease or illness.  Plaintiffs were exposed to a sufficiently high dose of chemicals and carcinogenic toxins that resulted in immediate symptoms and that are likely to cause future health problems as well as mental anguish, emotional distress, and related sequelae.

48.     Further, as a direct and proximate result of Defendants' tortious conduct, Plaintiffs' property has been contaminated, as has the groundwater and drinking water supply in East Palestine, Ohio.

49.     Plaintiffs have suffered discomfort, inconvenience, loss of use and enjoyment of their property, displacement from their home, emotional distress, and diminution in property value.

50.     Plaintiffs have been exposed to toxic chemicals released from Train 32N at levels far higher than background exposure levels. Some of these chemicals, including vinyl chloride, are known carcinogens.

51.     For the reasons set forth herein, Defendants were grossly negligent, acted with reckless indifference to the health and well-being of Plaintiffs, and/or intentionally failed to take the precautions necessary to prevent foreseeable railway accidents and, in the event of such accident, to prevent massive chemical releases of the sort that occurred herein.

## COUNT II: NEGLIGENCE PER SE

52.     Plaintiffs incorporates and re-alleges the allegations in paragraphs 11-38 above.

53.     Defendants' train operations were governed by various federal and local statutes, rules, and regulations, including 49 CFR § 217 et seq. - Railroad Operating Rules.

54.     Defendants had a continuing duty to comply with all provisions of law that pertain to the safety of rail travel and operations.

55.     The derailment that occurred in East Palestine on February 3, 2023, was the result of direct violations of regulations designed to allow for the safe operations of rail traffic in the United States.

56.     Moreover, Defendants violated numerous federal environmental laws and provisions in the manner in which they operated Train 32N, with the result being that the derailment caused massive, long-term damage to the people and property in the vicinity of eastern Ohio and western Pennsylvania.

57.     The statutes and regulations that apply to this lawsuit set forth standards of care and conduct that reflect reasonable and prudent behavior of railroad operators. Thus, the regulatory and statutory provisions at issue set forth standards of care applicable to Defendants.

58.     Defendants failed to conform to the laws and regulations that govern the operations of railroads, including, but not limited to, The Rail Safety Improvement Act and its amendments and implementing regulations, The Rail Safety Appliance Act and its amendments and implementing regulations, and federal regulations that govern the operation of railroads including Title 49 of the Code of Federal Regulations.  Therefore, Plaintiffs alleges that Defendants are guilty of negligence per se in manners to be described in more detail as this lawsuit progresses.

59.     Plaintiffs were in the zone of danger for harm due to the train derailment. As a direct and proximate result of Defendants' tortious conduct, Plaintiffs were exposed to toxic chemicals at significant levels. These exposures have created a significantly increased risk of disease or illness.  Plaintiffs were exposed to a sufficiently

high dose of chemicals and carcinogenic toxins that resulted in immediate symptoms and that are likely to cause future health problems as well as mental anguish, emotional distress, and related sequelae.

60.     The actions of Defendants were the proximate cause of Plaintiffs' injuries and damages for which compensation is sought to the fullest extent permitted by law.

## COUNT III:  PRIVATE NUISANCE

61.     Plaintiffs incorporates and re-alleges the allegations in paragraphs 11-38 above.

62.     Defendants' train derailment and resulting chemical fire has contaminated property and drinking water resources, contaminated the ecosystem, and caused widespread fish and animal deaths. Defendants created and maintained a private nuisance by causing the emission of ultrahazardous fumes, chemicals, carcinogens, and other toxic substances into the atmosphere on or in the vicinity of Plaintiffs and Plaintiffs' property.

63.     Defendants' tortious acts, as described herein, have interfered with Plaintiffs' use and enjoyment of their properties, caused displacement, and caused Plaintiffs to suffer injuries, inconvenience and emotional distress.

64.     Defendants' tortious acts constitute an absolute nuisance because Norfolk Southern was engaged in abnormally dangerous conduct, as described herein.

65.     Defendants' tortious acts also constitute a qualified nuisance because Norfolk Southern was engaged in negligent or reckless conduct, as described herein.

66.     The nuisance caused and continues to cause significant harm to the Plaintiff, including diminution in the value of their property and out-of-pocket expenses associated with the evacuation.

67.     This unreasonable and substantial interference is significant as the hazardous fumes, chemicals, carcinogens, and other toxic substances that have encroached on Plaintiffs property are known to cause serious disease and/or cancer if exposed.

68.     This unreasonable and substantial interference is significant as the hazardous fumes, chemicals, carcinogens, and other toxic substances that have encroached on Plaintiffs property are known to drive property values down.

69.     Plaintiffs have suffered injuries, as described herein, that are different from those experienced by the public generally, including the contamination of their property and drinking water and interference with use of their properties.

70.     Defendants' train derailment and the resulting chemical fire has created a private nuisance to those owners and renters of nearby property. This private nuisance has proximately caused the injuries described herein.

71.     Defendants' negligent, reckless, and/or intentional acts and omissions were unreasonable and constitute a continuous invasion of the Plaintiffs' property rights.

72.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs have incurred, and will continue to incur, costs and expenses

related to the contamination of their properties and drinking water, as well as the damages set forth herein.

## COUNT IV: TRESPASS

73.     Plaintiffs incorporates and re-alleges the allegations in paragraphs 11-38 above.

74.     Defendants, through the tortious conduct alleged herein, caused toxic chemicals to contaminate Plaintiffs' property.

75.     Plaintiffs did not consent to the chemical contamination of their properties, as alleged herein. Defendants knew or should have known that Plaintiffs would not consent to this trespass.

76.     Defendants' intentional, knowing, and negligent discharge of highly dangerous chemicals into Plaintiff's properties has interfered with Plaintiffs' rights to use and enjoy their property and constitutes trespass. Defendants' trespass has substantially impaired Plaintiff's use and enjoyment of their property and has caused Plaintiffs physical injury, discomfort, inconvenience, emotional distress, and diminution in property value.

77.     As a direct and proximate result of Defendants' acts and omissions, as alleged herein, Plaintiffs' properties have been contaminated, causing significant damage, including actual, consequential, and nominal damages, for which Defendants are responsible.

## COUNT V: STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY

78.     Plaintiffs incorporate and re-allege the allegations in paragraphs 11-38 above.

79.     In the alternative, Plaintiffs brings this claim for strict liability.

80.     Defendants were solely responsible for the spillage, management, and ultimately the burning of dangerous and toxic chemicals in the vicinity of East Palestine.  Defendants' actions constituted an abnormally dangerous or ultrahazardous activity for which Defendants are liable.

81.     Defendants' spillage, management, and burning of dangerous and toxic chemicals was inappropriate to the place where it was carried out, especially given the close proximity to residential communities like East Palestine, Ohio.

82.     The spillage, management, and burning of these dangerous and toxic chemicals cannot be made safe by exercise of due care. Furthermore, the burning of chemicals to avoid a massive explosion is inherently unsafe and abnormally dangerous. These actions posed an unreasonable risk to the health and safety of Plaintiff.

83.     As a result of Defendants' abnormally dangerous activities, Plaintiffs have suffered and will continue to suffer harm to their properties and injury to their person, resulting in damages as set forth herein.

## COUNT VI: DAMAGE TO TREES AND CROPS

84.     Plaintiffs incorporate and re-allege the allegations in paragraphs 11-38 above.

85. Under Ohio Revised Code § 901.51, no person shall recklessly injure or destroy a vine, bush, shrub, sapling, tree or crop standing or growing on the land of another or upon public land.

86. Defendants' reckless conduct, as described in this Complaint, has injured or destroyed or is injuring or destroying vines, bushes, shrubs, saplings, trees, and/or crops found on the land of Plaintiff.

87. Pursuant to Ohio Revised Code § 901.51, Defendants are liable for the damaged and destroyed vines, bushes, shrubs, saplings, trees or crops' value, as well as treble damages.

**COUNT VII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

88. Plaintiffs incorporate and re-allege the allegations in paragraphs 11-38 above.

89. Defendants' negligent and/or outrageous conduct constituted an unlawful interference with personal and property rights of Plaintiffs. As a direct and proximate result of Defendants' conduct, as alleged herein, Plaintiffs have suffered severe emotional distress, the effect of which continues until the present and will persist into the future, including, but not limited to, anxiety over and fear of future illness and disease damage to their property, and evacuation from their home.

90. This serious emotional distress was a foreseeable injury to the Plaintiffs.

91. In addition, Defendants' actions were in violation of law and in a conscious disregard for the rights and safety of others that had a great probability of

causing substantial harm thereby subjecting Defendants to liability for punitive damages.

92.     Plaintiffs were in the zone of danger for harm due to the train derailment. As a direct and proximate result of Defendants' tortious conduct, Plaintiffs were exposed to toxic chemicals at significant levels. These exposures have created a significantly increased risk of disease or illness.  Plaintiffs were exposed to a sufficiently high dose of chemicals and carcinogenic toxins that resulted in immediate symptoms and that are likely to cause future health problems as well as mental anguish, emotional distress, and related sequelae.

## COUNT VIII: INTENTIONAL AND/OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS

93.     Plaintiffs incorporate and re-allege the allegations in paragraphs 11-38 above.

94.     Alternatively, based on the tortious acts described above, Defendants' conduct in the operation of Train 32N and subsequent burning of toxic chemicals was extreme and outrageous.

95.     Defendants' conduct intentionally or recklessly caused serious emotional distress to Plaintiffs.

96.     As a direct and proximate result of Norfolk Southern's conduct, as alleged herein, Plaintiffs have suffered severe emotional distress, the effect of which continues to the present and will persist into the future, including, but not limited to, anxiety over

and fear of illness and disease, damage to their property and evacuation from their home.

97.     This serious emotional distress was a foreseeable injury to Plaintiffs.

98.     In addition, Defendants' actions were in violation of law and in a conscious disregard for the rights and safety of others that had a great probability of causing substantial harm thereby subjecting Defendants' to liability for punitive damages.

99.     Plaintiffs were in the zone of danger for harm due to the train derailment. As a direct and proximate result of Defendants' tortious conduct, Plaintiffs were exposed to toxic chemicals at significant levels. These exposures have created a significantly increased risk of disease or illness.  Plaintiffs were exposed to a sufficiently high dose of chemicals and carcinogenic toxins that resulted in immediate symptoms and that are likely to cause future health problems as well as mental anguish, emotional distress, and related sequelae.

**COUNT IX: MEDICAL MONITORING**

100.     Plaintiffs incorporate and re-allege the allegations in paragraphs 11-38 above.

101.     Defendants' negligent and reckless conduct proximately caused physical injury to Plaintiffs, including headaches, burning nose, runny nose, sore throat, persistent coughing, itchy and irritated eyes, and itchy skin.

102.     As a proximate cause of Defendants' negligent and reckless conduct, Plaintiff's immune systems and endocrine systems have been physically injured and

compromised, rendering them more vulnerable to disease, infection, and adverse health consequences, and causing them very real and tangible fear of developing future diseases due to the exposure.

103.    As a result of this overexposure to known toxins, Plaintiffs are at significant increased risk of infection, disease, and adverse health outcomes.  Because of this, Plaintiffs will require extensive medical monitoring that would not otherwise be required.

## COUNT X:  PUNITIVE DAMAGES

104.    Plaintiffs incorporate and re-allege the allegations set forth in paragraphs 11-38 above.

105.    Norfolk Southern knew, or should have known, that its conduct was grossly negligent and undertaken with conscious disregard for Plaintiff.

106.    Norfolk Southern acted with extreme reckless behavior and a conscious disregard for Plaintiffs in the operation, inspection, and maintenance of its railway and railcars, and in its decision to burn the aforementioned toxic chemicals after the derailment.

107.    Norfolk Southern's egregious conduct caused significant injury and damages to Plaintiff.

108.    Norfolk Southern's egregious conduct consists of such flagrant disregard as to constitute malice.

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment in their

favor and against Defendants as follows:

a.  For damages, including compensatory, punitive, and exemplary damages, in an
    amount determined to be just and reasonable;

b.  For an award in an amount determined to be just and reasonable to fund a
    medical monitoring program;

c.  For an award of attorneys' fees, costs, and litigation expenses, as permitted by

    law;

d.  Awarding pre- and post-judgment interest on any amounts awarded; and

e.  Awarding such other and further relief as may be just and proper.

## <u>JURY TRIAL DEMANDED</u>

A jury trial is demanded on all claims so triable.

Dated: 3/30/2023

/s/ Thomas W. Bevan_____
Thomas W. Bevan, Esq.
OH State Bar No. 0054063
Josh P. Grunda, Esq.
OH State Bar No. 0084266
Anjali A. Mehta, Esq.
OH State Bar No. 0085569
Patrick M. Walsh, Esq.
OH State Bar No. 0075966
**Bevan & Associates, LPA, Inc.**
6555 Dean Memorial Pkwy
Boston Heights, OH 44236
Telephone: 330.605.0088
Fax: 330.467.4493
Email: tbevan@bevanlaw.com
Email: jgrunda@bevanlaw.com
Email: amehta@bevanlaw.com
Email: pwalsh@bevanlaw.com

Mikal C. Watts
TX State Bar No. 20981820
Paige Boldt
PA State Bar No. 325110
Jay Henderson
TX State Bar No. 09424050
**WATTS GUERRA LLP**
5726 W. Hausman Rd., Suite 119
San Antonio, TX 78249
Telephone: 866.529.9100
Fax: 210.448.0501
Email: mcwatts@wattsguerra.com
Email: pboldt@wattsguerra.com
Email: jhenderson@wattsguerra.com

**ATTORNEYS FOR PLAINTIFF**